IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.                                                          CRIMINAL 05-0002 (JAG)

JUAN DE TORRES CUMMING,

Defendant

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.

This matter is before the court on motion to suppress filed by defendant Juan De Torres-Cumming (hereinafter "the Torres") on June 16, 2005. (Docket No. 18.) Specifically, the defendant moves for a hearing under Franks v. Delaware, 438 U.S. 154 (1978), seeking to attack the veracity of statements given by a Drug Enforcement Administration Special Agent James T. Watson, in an application for a search warrant which was issued by me on December 7, 2004. The warrant was in support of his request to search a two-story structure located in Guzmán Abajo Ward in Río Grande. After consideration of the evidence presented at the hearing held on August 16, 2005 and the memoranda submitted by the parties, it is my recommendation that the defendant's motion be DENIED.

II.

On December 7, 2004, I issued a warrant authorizing the search of a residence located in a white two-story structure with green trim located on Road 965, Km. 3.5 in Guzmán Abajo Ward of Río Grande. The search warrant, based solely on the affidavit of Drug Enforcement Administration Special Agent James T. Watson, was executed on December 9, 2004, and the defendant was arrested. The search revealed one hundred and seventy nine (179) marijuana plants.

CRIMINAL 05-002 (JAG)                          2

On January 4, 2005, the defendant was indicted by a grand jury sitting in this district.  The indictment charges him, aided and abetted by others unknown to the Grand Jury, with knowingly and intentionally possessing with intent to distribute 100 or more marijuana plants, that is, approximately one hundred seventy-nine (179) plants, a Schedule I Narcotic Drug Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii).  The indictment also charges a forfeiture count.

The defendant filed a motion to suppress and moved for a <u>Franks</u>' hearing in order to challenge the truthfulness of the statements contained in Agent Watson's affidavit.  The motion to suppress was referred to me for disposition on June 21, 2005.  The hearing was held on August 16, 2005.  The government was represented by Assistant United States Attorney G. Andrew Massucco La Taif, the defendant was represented by Assistant Federal Public Defender Juan F. Matos de Juan.

III.

A.  <u>The Standard Under Franks v. Delaware</u>

The Fourth Amendment of the United States Constitution states that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The Supreme Court's decision in <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), established for the first time, the right of a criminal defendant to a hearing to attack under the Fourth Amendment, the statements contained in an affidavit submitted in support of a request for a search warrant.  Indeed, a <u>Franks</u> hearing "is primarily a vehicle for challenging a warrant by impeaching the affiant." <u>United States v. Adams</u>, 305 F.3d 30, 36 n.1 (1st Cir. 2002).  In <u>Franks</u>, the Court

CRIMINAL 05-002 (JAG)                    3

held that a defendant is entitled to a hearing to challenge the truthfulness of statements given in support of a search warrant "if he [or she] makes a substantial preliminary showing that (1) a statement in the affidavit was knowingly and intentionally false, or made with reckless disregard for the truth, and (2) the falsehood was necessary to the finding of probable cause." United States v. Strother, 318 F.3d 64, 69 (1st Cir. 2003) (citing Franks v. Delaware, 438 U.S. at 171-72). Only when such a preliminary showing is made is the defendant entitled to a hearing. See United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002); United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002).  If at the hearing, the defendant successfully establishes by a preponderance of the evidence the allegations of perjury or reckless disregard, and, in the event that, with the false statements set to one side, the remaining contents are insufficient to establish probable cause, the warrant must be voided and the fruits of the search excluded. Franks v. Delaware, 438 U.S. at 156.

As noted, there are two components to any Franks v. Delaware analysis. First is the threshold showing that a defendant has to make of his entitlement to a hearing. If no such showing is made, then the court needs to go no further and the validity of the warrant and search must be upheld. Second, (assuming a hearing is granted) is the substantive showing that a defendant has to make to establish the falseness of the statements given.  Such analysis, however, always begins with a presumption of the validity of the warrant. Id. at 171.  In this case, my discussion is limited to the second prong of Franks, for it has already been determined that the defendant made a preliminary showing of his entitlement to a hearing.

B.  The Affidavit of DEA Special Agent James T. Watson

Special Agent James T. Watson submitted to me an affidavit in support of his application for the search warrant at issue.  Based on the facts alleged by him, I

CRIMINAL 05-002 (JAG)                4

determined that there was probable cause to search the above-mentioned structure and issued the search warrant.  The following are the salient facts alleged by the agent on December 7, 2004 in the affidavit supporting the search warrant application.

In the first week of November 2004, agents of ICE[1] received information that the defendant was using his residence and the surrounding area for the cultivation of marijuana and that the defendant and others were aware of the use of helicopters by law enforcement officers to locate marijuana plots.  The information is that every time those people heard an approaching helicopter, they would move the plants into the residence or surrounding area.  In October and the first week of November, the source of this information saw marijuana plants inside the residence.[2]   The informant also noted that the defendant had a criminal record and that there were 300 to 500 plants in the house and outside.  The name given by the informant was the same name as the one on the utility bill for the property and the one with the criminal record (in California), including the same social security number.

On November 16, 2004, Task Force Agent Felipe Rivera of ICE conducted aerial surveillance of the residence at about 10:30 a.m. and saw a male walk from the wooded area behind the house, acting frantically and attempting to hide several plants, which the Task Force Agent believed to be marijuana.  This observation was recorded from the helicopter.

On November 24, 2004, Agent Watson saw the video and concluded that the plant being moved by the male was marijuana, considering its size, color and type.

―――――――――――――――

[1]United States Immigration and Customs Enforcement.

[2]This was the first time the source provided information to law enforcement officers.

CRIMINAL 05-002 (JAG)                        5

The agent concluded that the plant was being relocated to avoid detection by the helicopter.

Foot surveillance was conducted on November 26, 2004 by Special Agents Watson, Anthony Vélez and Richard Mosquera, and Task Force Agent Rivera.  At a position about 75 yards downwind from the residence, Agents Watson and Vélez were able to detect the distinct smell of marijuana being blown from the direction of the residence.  On December 5, 2004, Agent Watson returned to the same place and made the same observation.

These are the facts upon which Agent Watson relied in his affidavit to seek a search warrant.  The remainder of the application recites his conclusions based on experience in previous investigations (over 200), training, and education.

An observation of the videotape recorded from the helicopter shows a man in a white shirt coming out of the shrubs towards the house in a jumping fashion and then moments later the same individual or another man in a white shirt retrieve plants one at a time from nearby the house as if to take them out of the sun, or, in one interpretation, to avoid their being seen from the sky.

As a result of these observations and other information, the officer concluded that the residence and its surroundings contained a number of marijuana plants.

C.  The Suppression Hearing

The issue presently before the court is whether the co-defendant established by a preponderance of the evidence that the affidavit prepared by Agent Watson was perjured or made with reckless disregard for the truth.  See United States v. Barnett, 989 F.2d 546, 556 (1st Cir. 1993).  If so, then the court needs to determine if the affidavit, without the false materials, is still supported by probable cause.  Id.

At the suppression hearing, Special Agent Richard Mosquera testified that in the first week of November 2004, a source was debriefed who informed agents that

CRIMINAL 05-002 (JAG)                    6

the defendant was involved in the growing and distribution of marijuana plants and
that the defendant had been convicted previously. (Agent Mosquera did not know
the source's name, motive, and what motive the source had for cooperating.)  The
name and address of the defendant was corroborated.  With that information, an
aerial surveillance on November 26, 2004 revealed a white male running from the
woods to the residence carrying 5' to 7' tall plants, frantic and nervous, trying to
conceal the plants from the helicopter's view.  (Or the person might have been
jumping over muddy puddles, since the area was muddy.)

On December 5, 2004, foot surveillance, at a fence which surrounded the
property and perhaps 75' to 100' from the concrete structure subject of the warrant
resulted in three of the agents smelling marijuana.  Agent Mosquera smelled the
marijuana, the scent of growing plants (not smoke).   The agent related his
familiarity with marijuana plants and their scent, describing the odor as strong,
tangy.  The smell only lasted a few seconds, perhaps 5 to 10 seconds.

At the time of the execution of the search warrant, the take-down, the agents
entered the structure and went upstairs.  They found small growing plants.  Plants
were inside and out; there was also cut marijuana, over 1,000 grams.  There were
fans outside the structure which were connected to a timer.  (Ex. 2.)

Dr. James Ackerman, Jr., Ph.D., professor of biology at the University of
Puerto Rico,  testified as an expert in biology, which included seeing and smelling
marijuana plants in a field in Jamaica.  He said that all plants emit odors, although
they do not emit so much odor when young.

At a flowery, mature stage, the plants produce a very strong odor.  When
relatively young, the buds are tight, but when the plant matures, the buds elongate
and spread out.  The plant remains mature, at the flowery stage, for about a month.
As to 189 plants, if they were mature, the smell would be very strong, distinct,

CRIMINAL 05-002 (JAG)                    7

pungent odor.  (There was information provided by the source that there were 300 to 500 plants at the residence prior to the date of the seizure.)  One can recognize and distinguish the same.  The more plants, the greater the odor.  The expert noted, based upon looking at exhibits 1, 2 and 3, that in the aggregate the odor of these plants would not be strong, based upon the flower buds.  Looking at Exhibit C, the expert found it hard to tell the level of maturity of the plants.

        The expert related having been in a field of marijuana plants in Jamaica where there were hundreds of mature plants but he did not detect any odor until he was actually among the plants.  He noted that because of the vegetation levels noted in the video, there can be a confusion of odors on a hot day since grasses also have odors.  Looking at the house, he noted that it was a mid-size nursery and the plants would emit a mix of odors, which the average person cannot distinguish from a distance unless there was a big field of marijuana.  In this case, most of the plants were immature so they could not be smelled.  He also noted that there is no difference between the smell of mature marijuana plants and tomato plants.  He noted that while the marijuana plant odor can carry over distance, it loses concentration as it drifts away.  Having obtained wind pattern data for two dates, the expert noted, based on hearsay documents, that on November 26, 2004, the wind was blowing from 168 degrees, roughly south to north so that if the agents were NNE of the house, they could not smell any marijuana plant odors.  On December 5, 2004, the wind was blowing from SSE.  The expert was helped in his analysis by a paper by Doty, Wudarski, Marshall, and Hastings, Marijuana Odor Perception:  Studies Modeled from Probable Cause Cases.  (Ex. B.)

        D. <u>Discussion</u>

        Again, the issue faced by the court is whether the defendant established by a preponderance of the evidence that the supporting affidavit was perjured or made

CRIMINAL 05-002 (JAG)                    8

with reckless disregard for the truth.  See United States v. Barnett, 989 F.2d at 556. If it is, then the court must determine if the affidavit, without the false materials, is still supported by probable cause.  Id.

    The issue of whether the evidence in this case must be suppressed turns on credibility. However, again, the standard is clear.  In order for the court to suppress evidence of the search, the statement in the affidavit must have been knowingly and intentionally false, or made with reckless disregard for the truth, and such falsehood would have had to be necessary to the finding of probable cause.

    Before a search warrant issues, the "warrant application must demonstrate probable cause to believe that (1) a crime has been committed–the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched–the so-called 'nexus' element." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999); United States v. Zayas-Díaz, 95 F.3d 105, 111 (1st Cir. 1996).

    Probable cause means that the totality of the circumstances gives rise to at least a fair probability that a search of the target premises will uncover evidence of the suspected crime.  See Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Feliz, 182 F.3d at 86; United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997); United States v. Schaefer, 87 F.3d 562, 565 (1st Cir. 1996); United States v. Jewell, 60 F.3d 20, 23 (1st Cir. 1995).  The task of the issuing magistrate judge is simply to make a practical, common-sense decision.  See New York v. P.J. Video, Inc., 475 U.S. 868, 876 (1986); United States v. Aguirre, 839 F.2d 854, 857-58 (1st Cir. 1988).

    The defense argues that not only was the cooperating individual untested, but that the agents deliberately lied or were reckless in seeking the search warrant, since the marijuana plants could not have been smelled at that distance, and considering the types of plants, their concentration and the distance from the

CRIMINAL 05-002 (JAG)                    9

observation point by the fence line.    The defense questions a number of facts testified to by Agent Mosquera and placed in his affidavit, such as the convenience of his having smelled the marijuana from where he was on both occasions.  It is clear that the uncorroborated tip would have supplied insufficient information for a judge to issue a valid search warrant.   However, the law enforcement officers corroborated sufficient information for the issuing judge (me) to reach the threshold of marginality making the warrant a valid one in a Fourth Amendment sense.  Such information includes the description of the defendant and the nursery structure where the marijuana plants were housed.   Furthermore, Task Force Agent Felipe Rivera's aerial surveillance revealed an individual who may have been trying to avoid detection, trying to hide marijuana plants, or trying to jump over muddy puddles to avoid getting his pants saturated.

An affidavit for a search warrant must be interpreted "in a commonsense and realistic fashion."   United States v. Ventresca, 380 U.S. 102, 108 (1965).  Looking at the affidavit under the "totality of the circumstances" yardstick engendered by Illinois v. Gates, 462 U.S. at 232; see United States v. Diallo, 29 F.3d 23, 25 (1st Cir. 1994), and recognizing that a magistrate judge's "determination of probable cause should be paid great deference by reviewing courts," Illinois v. Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)), I find that the search of the defendant's house was valid and the affidavit supporting the search warrant sufficient for a magistrate judge to have "a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing. . . ." Illinois v. Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). This conclusion follows the respect accorded to warrants and the principle that the resolution of doubtful or marginal cases (of which this is not necessarily one) should be largely determined by the preference to be accorded to warrants.  See

CRIMINAL 05-002 (JAG)                    10

Massachusetts v. Upton, 466 U.S. 727, 733 (1984); United States v. Ventresca, 380 U.S. at 109, cited in Illinois v. Gates, 462 U.S. at 237 n.10. I explain my reasoning below.

IV.

The statements contained in the sworn statement submitted by Special Agent Watson in support of his application for a search warrant of the structure in Río Grande were neither perjured nor made with reckless disregard for the truth. The credibility of the untested source was sufficiently corroborated by other information as to give the information provided by such source some weight. The information of the awareness of the defendant of the use of helicopter to locate marijuana plots, the movement into the residence of marijuana plots to avoid aerial detection, as well as the information that De Torres Cumming was about 40 years old and was a convicted felon, were all proven accurate. Additional facts proven accurate include the name of the defendant through the reference to the utility bill, and the similarity between the birthdays of the De Torres Cumming in the prior drug conviction, and the one who contracted for utilities. Agent Rivera thought the plants which the defendant was trying to hide were, in his opinion, marijuana. Agent Watson, looking at the video that was shot, reached the same conclusion as to odd behavior and the movement of the apparent marijuana plants. The ability of the agents to detect the scent of marijuana from 50 feet or 75 yards for a few moments on November 26, and December 5, 2004 may have been considerably attacked through the testimony of Dr. Ackerman but even his own testimony, scientific in part, was fairly imprecise in many respects. Assuming for the sake of argument, and only for the sake of argument, that the section of the affidavit making reference to the marijuana plant odors on November 26, and December 5 were false or made with

CRIMINAL 05-002 (JAG)                    11

reckless disregard, the warrant would still have sufficient reliable information which would support a search warrant within the perimeter of the Fourth Amendment.

In view of the above, it is my recommendation that the defendant's motion to suppress be DENIED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 31st day of August, 2005.


                              S/ JUSTO ARENAS
                    Chief United States Magistrate Judge